# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **AT&T CORP.** | * | **CIVIL ACTION NO. 07-1544** |
| **VERSUS** | * | **JUDGE JAMES** |
| **COLUMBIA GULF TRANSMISSION COMPANY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge is a motion for partial summary judgment filed by plaintiff, AT&T Corp. [doc. # 18]. The district court referred the motion to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that plaintiff's motion for partial summary judgment [doc. # 18] be **DENIED**.

## Background

On September 17, 2007, AT&T Corp. ("AT&T") filed the above-captioned suit against Columbia Gulf Transmission Company ("Columbia") to recover damages that AT&T sustained after Columbia struck an AT&T underground telecommunications cable while excavating on September 19, 2006. On August 15, 2008, AT&T filed the instant motion for partial summary judgment seeking a determination that 1) it is entitled to recover damages for its loss of use of the underground cable regardless of any evidence that AT&T lost revenues or profit, or that it actually rented substitute capacity from another carrier prior to repair; and 2) the proper measure for calculating AT&T's loss of use damages is the cost of renting substitute capacity on another telecommunications carrier's system. In conjunction with its motion for summary judgment,

AT&T submitted the following uncontroverted statements of material fact,[1]

1. AT&T is a telecommunications carrier in the business of providing telecommunications services to business and residential customers in the State of Louisiana and various other states. AT&T provides its services via buried and aerial cables, which are located throughout the State of Louisiana, including in Richland Parish, Louisiana.

2. In September 2006, Defendant Columbia Gulf Transmission Company "was repairing its natural gas pipeline where it crossed U.S. Highway 80 approximately two-tenths of a mile west of Cow Bayou in Richland Parish, Louisiana."

3. On September 19, 2006, Defendant "struck and damaged . . . an AT&T fiber optic cable" with a track hoe while performing repair work to its pipeline."

4. At the time of the September 19, 2006 damage, AT&T had four live OC48 circuits and 219 live DS3 circuits on the fiber optic cable that was damaged. AT&T transmitted telecommunications and data services over those circuits for its customers.

5. As a result of the September 19, 2006 damage to AT&T's fiber optic cable, AT&T lost the use of the live circuits on that cable for the 9 hours and 7 minutes it took AT&T to repair that cable to the point AT&T's customer telecommunications traffic was no longer impacted.

6. AT&T's repairs to the damaged fiber optic cable continued for several months thereafter.

AT&T's Statement of Material Facts (citations omitted).[2]

Briefing is now complete, and the matter is before the court.

---

[1] At least for purposes of this motion, the facts set forth in the movant's statement of material facts are deemed admitted to the extent that they are not controverted by the non-movant's statement of material facts. LR 56.2.

[2] Paragraph 7 of AT&T's statement is omitted here; it merely explains how it calculated its proposed loss of use damages.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).[4] In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The instant parties agree that in this diversity case, Louisiana law applies. (Pl. Memo., pg. 4 n2; Def. Memo., pg. 2); *see also, In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, \_\_\_ U.S. \_\_\_, 128 S.Ct. 1230 (Feb 19, 2008)).[5]

---

[3] I.e., beyond doubt.

[4] As the plaintiff, AT&T has the burden to prove damages. *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1092-1093 (La. 1983).

[5] "*Erie* requires that state law govern which elements of damages are available for the jury's consideration." *Plantation Key Developers, Inc. v. Colonial Mortg. Co. of Indiana, Inc.*, 589 F.2d 164, 171 (5th Cir. 1979) (citation omitted).

The parties have not identified any Louisiana Supreme Court decisions that directly address the issues raised in the pending motion; thus this court is compelled to make an *Erie* guess. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000). In so doing, the court must use its best judgment to determine

> how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*Vanderbrook*, 495 F.3d at 206 (internal citations and quotation marks omitted). With these guideposts in place, we turn to the issues presented.

**a) Loss of Use Damages**

AT&T contends that Columbia is liable in tort for the damages it sustained, including the costs of repair, loss of goodwill, and loss of use. (Complaint, ¶¶ 10-16).[6] The question presented is whether a business such as AT&T may recover loss of use damages despite the apparent lack of direct pecuniary loss.[7] Our inquiry begins with the civil code: "[e]very act of man that causes

---

[6] AT&T also alleges that Columbia violated provisions of the Louisiana Underground Utilities and Facilities Damage Prevention Law (a/k/a the "One Call Law"), La. R. S. 40:1749.11, *et seq*.

[7] Under Louisiana law, the bundle of rights that comprise full ownership include, (1) *usus*-the right to use or possess, i.e., hold, occupy, and utilize the property; (2) *abusus*-the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) *fructus*-the right to the fruits, i.e., to receive and enjoy the earnings, profits, rents, and revenues produced by or derived from the property.

*Rodrigue v. Rodrigue*, 218 F.3d 432, 436-437 (5th Cir. 200) (citation omitted); *see*, La. Civ. Code Art. 477.

AT&T does not allege that Columbia interfered with its right to alienate or to enjoy the profits of its damaged telecommunications cable. Rather, AT&T's claim centers upon the transitory

damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Art. 2315. Moreover, "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. Civ. Code Art. 2324.1. A party that injures another is obliged to restore the injured party to the position that it would have occupied if the injury had not occurred. *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So.2d 874, 876 (La.1993) (citing *Coleman v. Victor*, 326 So.2d 344, 346 (La.1976)). When one's property is damaged, "the measure of damages is the cost of restoring the property to its former condition." *Id*. However, there is no mechanical rule for the assessment of property damage under Article 2315. *Id*.

To support its loss of use claim, AT&T substantially relies upon a recent decision from the Eastern District of Louisiana, *Level 3 Communications, LLC v. Toomer Electrical Co., Inc.*, 557 F. Supp.2d 745 (E.D. La. 2008). Under facts akin to those at issue here, Judge Zainey concluded that a telecommunications provider could recover loss of use damages for a severed cable despite having internally rerouted the communications traffic. *Id*. In his decision, Judge Zainey relied upon two Louisiana appellate court decisions, *Chriss v. Manchester Insurance & Indemnity Co.*, 308 So.2d 803 (La. App. 4th Cir. 1975) and *Nunez v. St Bernard Parish Fire Department*, 519 So.2d 857 (La. App. 4th Cir. 1988). In *Chriss*, the court awarded plaintiffs damages for the loss of use of their house although they did not actually rent substitute property.

---

impingement of its right to use the cable. However, AT&T arguably transferred its right to use the cable's active circuits to its customers. Thus, unless AT&T became subrogated to the rights of its customers, it did not suffer a loss of use of the active circuits. *See, Cleco Corp. v. Johnson*, 795 So.2d 302 (La. 2001) (assuming that a utility company was subrogated to the rights of its customers, the company could bring a claim for property damage against a defendant that knocked down a utility pole). Conceptually, of course, AT&T may still have a claim for the loss of use of any severed *inactive* circuits or the loss of use of backup circuits that it temporarily used while the active circuits were under repair. *See*, discussion, *infra*.

5

*Chriss, supra*. The court reasoned that plaintiffs suffered loss of use when they had to endure the inconvenience of using their property under difficult circumstances. *Id*. In *Nunez*, although the plaintiffs did not rent substitute accommodations, the court made separate awards for plaintiffs' loss of use of their house and for their accompanying mental anguish and inconvenience. *Nunez, supra*.

Nonetheless, supreme court decisions suggest that the state's highest court would not permit a business to recover loss of use damages when it did not actually suffer those damages. For instance, in *Reisz v. Kansas City Southern R. Co.*, the Louisiana Supreme Court permitted a building owner to recover loss of use damages for ten days following a fire that partially destroyed the building. *Reisz v. Kansas City Southern R. Co.*, 148 La. 929, 88 So. 120 (La. 1921). The court awarded damages for the loss of use based upon a prorated amount of the monthly lease. *Id*.[8]

In *Sherwood v. American Ry. Express Co.*, the Louisiana Supreme Court recognized that a plaintiff was entitled to recover loss of use damages as a result of injury to property during the temporary period that the owner was deprived of the use of his car. *Sherwood v. American Ry. Express Co.*, 158 La. 43, 103 So. 436 (La. 1925). However, the court declined to award plaintiff the cost of renting a substitute car in the absence of any evidence establishing how long it took to repair the damaged car. *Id*.[9]

---

[8] The decision implies that the building owner had sustained an actual loss of rental income. *Id*.

For purposes of AT&T's argument that it would be unfair to compel it to reduce its loss of use damages to an artificial hourly rate, it is worth noting that the *Reisz* court had no qualms about calculating loss of use damages based upon an artificially prorated monthly lease payment. *Reisz, supra*.

[9] In another car accident case, the Louisiana Supreme Court recognized that a car owner was entitled to loss of use damages during the time required to make repairs. *Goode v. Hantz*,

In *Alexander v. Qwik Change Car Center, Inc.*, the plaintiff sought loss of use damages when defendant converted his car, even though plaintiff did not rent a substitute car. *Alexander v. Qwik Change Car Center, Inc.*, 352 So.2d 188 (La. 1977). The court awarded loss of use damages for the inconvenience and mental anguish suffered by plaintiff. *Id*.

In Louisiana, it is manifest that a corporation cannot incur damages for inconvenience or mental anguish. *See, Walle Corp. v. Rockwell Graphic Systems, Inc.*, 9 F.3d 103 (5th Cir. 1993) (unpubl.); *Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F. Supp.2d 755, 772 (W.D. La. 2004); *Warwick Apartments Baton Rouge v. State Through Dept. of Transp.*, 633 So.2d 895, 899 (La. App. 1st Cir. 1994); *Whitehead v. American Coachworks, Inc.*, 837 So.2d 678, 682 (La. App. 1st Cir. 2002). As then District Judge Clement recognized, the only losses an entity that is designed to produce profits can suffer are economic losses. *Walle Corp. v. Rockwell Graphics Systems, Inc.*, 1992 WL 245963 (E.D. La. Sept. 21, 1992), *affirmed in part*, 9F.3d 103 (5th Cir. 1993).

The preceding approach to loss of use claims by corporations is encouraged by a supreme court decision of more recent vintage, *Borden, Inc. v. Howard Trucking Co., Inc., supra*. In *Borden*, production at plaintiff's methanol plant was delayed after a transportation company damaged one of plaintiff's compressors during a plant turnaround. *Id*. Plaintiff sought damages for the cost of repairing the compressor, extra labor to reinstall the compressor, and lost production due to the delayed startup of the plant. *Id*. The court denied plaintiff's claim for lost

---

209 La. 821, 25 So.2d 604 (La. 1946). However, the court did not award loss of use damages because plaintiff did not claim it and because he offered no proof that he actually hired another car. *Id*. The court did award damages for plaintiff's loss of time that he expended while looking for another car. *Id*.

profits because there was no evidence of any lost sales due to the compressor delay. *Id*.[10] However, the court found that plaintiff suffered some form of damage because the plant typically ran continuously, but was unable to produce methanol during the down time. *Id*. The court calculated the loss by multiplying the estimated number of gallons of methanol that would have been produced by the inventory value of a gallon of methanol. *Id*.[11]

This sampling of tangentially relevant Louisiana Supreme Court decisions does not persuade the undersigned that the state's highest court would recognize a corporation's claim for loss of use damages when the entity did not suffer an actual, identifiable, consequential, and measurable loss. A loss of use claim grounded upon mere inconvenience or diminution of enjoyment is simply not cognizable on behalf of a corporation. That is not to say, however, that AT&T has suffered no loss due to down time in this case. AT&T may well be able to adduce evidence to support some form of loss of use or cost of mitigation.

At this stage, there is no evidence that AT&T suffered any interruption of the service provided by the active circuits of the severed cable.[12] Thus, AT&T did not suffer any loss due to the downtime of the active circuits; their purpose was perpetuated via other means. To the extent that AT&T argues that it sustained a loss of use of any inactive circuits on the severed cable, it

---

[10] The court so concluded despite evidence that the plant's reserve level of methanol had been reduced. *Id*.

[11] Of note, the court calculated plaintiff's downtime damages based upon the estimated number of *hours* and *minutes* that the plant was inoperable due to defendant's negligence. *Id*.

[12] In all likelihood, service was immediately transferred to other circuits. *See e.g., AT&T Co. v. Cannon Construction, Inc.*, Civil Action No. 95-2203 (W.D. La. July 22, 1997) (service immediately re-routed to AT&T's FASTAR system).

would have to establish that it was unable to use the inactive circuits for their intended purpose.[13]

In its opposition memorandum, Columbia contends that plaintiff had a duty to mitigate its damages. Indeed, that appears to be exactly what AT&T did in this case. An injured party is entitled to recover the costs that it reasonably incurred to mitigate its damages. *See, Julian v. Ralph*, 206 So.2d 121 (La. App. 4th Cir. 1968); *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 379-380 (5th Cir. 2006). By transferring service from the severed cable to other transmission sources, AT&T avoided service interruption. However, if prior to the accident, AT&T is deemed to have transferred use of the circuits to its customers, then the act of switching transmission service to an alternative cable did not mitigate any loss of use damages for AT&T. The transfer would, however, have mitigated AT&T's potential damages for loss of goodwill. The reasonableness of AT&T's mitigation efforts should be considered in relation to the damages that it avoided.

**b) Rental Cost as Measure of Loss of Use**

In a circuitous way, this leads the court to a variation of the second issue raised by plaintiff's motion, i.e., whether the proper measure of damages for the loss of use of a telecommunications cable is the cost of renting substitute property. To be sure, AT&T is free to argue to the trier of fact that its mitigation costs should be the cost of renting comparable capacity on another carrier's system. *See, Alexander*, 352 So.2d at190 (damages for loss of use are measured by the rental cost of a substitute vehicle). However, rental cost is not the only way to calculate mitigation costs. *Id*. If AT&T actually used another one of its inactive cables to

---

[13] For example, AT&T could recover damages for the inactive circuits if it can establish that, but for the severance, the inactive circuits would have been used during the down time. AT&T can certainly claim any permanent diminution of the life span or quality of the severed circuits due to the physical damage.

reroute service, then the cost may be solely the increased wear and tear on the cable for the time that the cable was used. Likewise, if AT&T rerouted traffic to a cable dedicated for emergency use, then the mitigation cost would be any variable costs associated with the temporary transmission. Again, reasonableness of the mitigation costs must be measured against the cost of the damages avoided.

Plaintiff could also argue that its mitigation costs should include the prorated cost of constructing any emergency backup system that it used. However, such costs arguably transgress the principle behind compensatory damages which is to return property owners to their pre-injury condition. *See*, *Roman Catholic Church of Archdiocese of New Orleans, supra*. For instance, if a homeowner bought an emergency generator to back up its electrical service from the grid, should the homeowner be able to recover the fixed cost of the generator in addition to the variable costs incurred as a result of an interruption to the electrical service?[14] Prior to the service interruption, the homeowner already owned the generator. Obligating a tortfeasor to pay the prorated purchase price of the generator would put the homeowner in a better position than she was before the accident.[15]

---

[14] What about the cost of smoke detectors or sprinkler systems for preventing fire damages?

[15] This reasoning conceivably implicates concerns reflected in the collateral source rule. The Louisiana Supreme Court recently stated that,
> [t]he collateral source rule is a doctrine of common law origin, jurisprudentially imported into the law of this state. Basically, the rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Under the collateral source rule, payments received from an independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. As a result, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits.

*Bellard v. American Cent. Ins. Co.*, 980 So.2d 654, 667-668 (La. 2008) (internal citations

The court is well aware of the decisions from other jurisdictions that address similar loss of use claims made by telecommunications providers in other states. *See e.g., MCI Worldcom Network Services, Inc. v. Mastec, Inc.*, ___ So.2d ___, 2008 WL 2678024 (Fla. 2008); *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 (N.D. Ill. Dec. 6, 2006). However, the decisions run the gamut, and as AT&T aptly recognized, are not binding or dispositive here. *See*, Pl. Reply Memo., pg. 5. To the extent that the instant decision conflicts with *Level 3 Communications, LLC v. Toomer Electrical Co., Inc.*, the undersigned respectfully disagrees. Moreover, today's recommendation is more in line with decisions from this district which have held on two prior occasions that under Louisiana law AT&T is not entitled to loss of use damages when it did not suffer any pecuniary loss. *AT&T Co. v. Cannon Construction, Inc., supra*; *AT&T Co. v. Crumpler, et al*, Civil Action Number 96-0105 (W.D. La. May 19, 1997).

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for partial summary judgment [doc. # 18] filed by plaintiff AT&T Corp. be DENIED.

---

omitted).
Although the court in *Level 3 Communications, LLC, v. Toomer Electrical Co.*, relied upon the collateral source rule, it did so in connection with plaintiff's primary claim for loss of use, not for mitigation costs. There is no indication that the Louisiana Supreme Court would extend this imported common law rule to costs of mitigation. Moreover, there is authority from common law jurisdictions that the collateral source rule requires a payment or benefit by a third party; a benefit conferred upon oneself does not suffice. *See, Grafft v. Jensen*, 305 Wis.2d 377, 738 N.W.2d 191 (Wis. App. 2007); *Olariu v. Marrero*, 248 Ga. App. 824, 826, 549 S.E.2d 121, 123 (Ga. App. 2001).

Plaintiff argues that if defendant does not have to pay damages for the cable's down time, then there will be no incentive for excavators to implement safe digging practices. However, the purpose of compensatory damages is not to punish the tortfeasor. If liability is established, defendant will have to bear *inter alia*, the costs of repair, mitigation, and litigation. These costs will have more than a minimal deterrent value.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of September, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE